Schneider Home Equipment Co., Appellant, *v.* Sicking, Appellee; Bankers Indemnity Ins. Co., Appellant.

(No. 7992—Decided June 13, 1955.)

*Mr. James G. Andrews, Jr.,* and *Mr. John A. Lloyd, Jr.,* for appellant Schneider Home Equipment Company.
*Messrs. McCaslin, Imbus & McCaslin,* for appellee.

Matthews, J. This action is the result of a collision between the plaintiff's Chevrolet truck, operated by its employee, and the defendant's Pontiac automobile, operated by the defendant, in the intersection of Seegar and Carll Streets in the city of Cincinnati.

The issues of fact raised by the defendant's denial of the allegations of negligence in the plaintiff's petition and the plaintiff's denial of the allegations of negligence in the defendant's cross-petition were submitted to a jury, which found a verdict in plaintiff's favor for the damage to its truck.

At the close of all the evidence, the defendant moved for an instructed verdict and, after judgment had been entered on the verdict, filed motions for judgment notwithstanding the verdict and for a new trial. The court overruled the motion for a new trial but sustained the motion for judgment notwithstanding the verdict. The court also dismissed the defendant's cross-petition for damages to her Pontiac automobile.

Both parties filed notices of appeal from the judgments by which they were adversely affected.

The plaintiff charged the defendant with negligence in proceeding at a speed that was greater than was reasonable and proper under the circumstances, to wit, at a speed of at least 35 miles per hour in a 25 miles per hour zone, in failing to keep a

proper lookout, in failing to see or in disregarding the direction of the official school crossing guard who was stationed at the intersection, and in failing to have her automobile under control and operating it without due regard to the rights and safety of others.

The defendant charged the plaintiff with negligence in that it disregarded the stop sign on Seegar Street, just south of Carll Street, failed to yield the right of way to her and failed to keep a proper lookout for other traffic approaching the intersection.

The plaintiff introduced in evidence the ordinance conferring upon school crossing guards, while directing traffic, the same powers as members of the regular police force, doing like duty, and requiring the school crossing guards, while on duty, to wear distinctive caps or other equipment to indicate their authority. Attention was also called to the ordinance (and the court gave a special charge in conformity thereto) making it the duty of all persons to comply with the lawful directions of police officers directing, controlling, or regulating traffic.

The court also charged the jury generally on the issues raised by the pleadings, and we find no error therein of a prejudicial nature.

Only three witnesses testified to the occurrences on this occasion—the operator of the plaintiff's truck, the defendant and Bakhus, the school crossing guard.

The defendant was proceeding on a through highway, and, if she was proceeding lawfully and had there been no school crossing guard at the intersection, she would have had the right to proceed without interruption across the intersection. Her uncorroborated testimony would indicate that she was proceeding at a lawful speed, but she admits that she saw Bakhus and knew that the intersection was within a school zone and, from rather frequent use of the intersection, that he was the official school crossing guard. She testified that he was on the sidewalk and that she saw him move his arms, but made no claim that he thereby signaled her to proceed or not to proceed. She said it was a cold morning and she thought he was trying to warm himself by the movement rather than give a signal either to proceed or to stop. She testified that she had stopped about

150 feet west of the intersection, and that she was traveling at about 18 miles per hour when she entered the intersection. She did not see the plaintiff's truck until she was within 10 feet of it, and the front of her automobile struck the left side of the plaintiff's truck.

The operator of the plaintiff's truck testified that he approached Carll Street from the south on Seegar Street; that there was a stop sign at the southeast corner of those streets; that he was in second gear and was coming to a stop at the stop sign when "the safety patrol fellow was standing on the opposite corner on the steps of the drug store. * * * As I came, approached the stop sign, he came off the sidewalk up on the steps, off of the sidewalk and out in the street and he waved me through the intersection, right through there," and he had proceeded halfway through the intersection and the rear of his truck was in the center of the intersection when it was struck by the front of the defendant's automobile. He testified that at the time of the collision there was sufficient space for the defendant to have passed to the rear of his truck and proceed on eastwardly on Carll Street. He testified also that he had tools and about 400 pounds of metal in his truck, and that the defendant struck the left side at the door and to the rear. The collision did not damage the front fender of his truck. The truck turned over at the northeast corner of the intersection. He testified also that he entered the intersection at between 5 and 10 miles per hour, that he looked before entering the intersection and saw no one approaching on Carll Street and did not see the defendant's automobile until the collision, and that he saw no children there at any time.

As already stated, the only other witness to the occurrence was the school crossing guard, Bakhus. He testified that on that morning he was on duty at the intersection and was wearing the regulation cap and badge indicating his official position and authority; that he was standing on the sidewalk at the northeast corner of the intersection in charge of two children who desired to cross Carll Street to the southeast corner; and that he saw the plaintiff's truck approaching on Seegar Street and "he got a couple of feet from the stop sign and I motioned to him if he is going up or around." In response to the question, "as the

truck approached this stop sign, you motioned like this up See-gar, is that correct?'' he said, ''seeing which way he was going, and he nodded his head he was going up, so I started with my children across to the grocery.'' He testified further that before he started across Carll Street ''he waved the truck on''; that the truck was two-thirds of the way across the intersection when the crash occurred; that he looked to the west on Carll Street and there was no traffic approaching from that direction; that he did not see defendant or her automobile until just before the collision; and that ''she turned to the left.'' In answer to the question, ''there was room then to the rear of the truck for traffic, for this lane of traffic proceeding eastwardly on Carll Street?'' he answered, ''yes, sir.''

There was much more detail developed, but we believe what we have said fairly summarizes the situation presented by the evidence.

Now, what is that situation from the standpoint of the law? First, we will consider the plaintiff's position. The only charge against it is that its operator failed to heed the stop sign at the southeast corner of Seegar and Carll Streets, but we have the uncontradicted testimony of the operator of the truck and the officer directing traffic that the officer directed him to proceed on Seegar across Carll; and it is not disputed that the officer had authority to give the direction, and that it was the duty of the operator of the truck to obey. It is true that the direction was given by some motion of the hand and the operator's acquiescence by a nod of the head; and the sufficiency of the signal is challenged. We know of no rule requiring the intent of the traffic officer to be given in any particular way. All that is required is that it be understood, and there is no doubt that it was understood in this instance.

It is urged that the traffic officer was on the sidewalk and that he should have been in the vehicular part of the street. It seems to us that, as his concern was the safety of school children, keeping them on the sidewalk until the vehicular part of the street was cleared required him at times to be on or near the sidewalk. Furthermore, whether he was on the sidewalk or on the vehicular part of the street, he was within the intersec-

tion, where his duty required him to be. The parties saw him and understood he was on duty at the intersection.

Such being the facts, the plaintiff cannot be charged with negligence in following the direction of the traffic officer, even though in so doing the plaintiff's driver disregarded the stop sign.

Now let us consider the evidence as it relates to the defendant. As she approached Seegar Street, she saw the traffic officer, whom she knew from previous contact. He gave her no signal to proceed across the intersection, according to her own testimony. The evidence shows that the front of her automobile struck the side of plaintiff's truck and caused it to overturn in the northeast quarter of the intersection; that she had room to pass to the rear of plaintiff's truck, but, instead of doing so, she turned to the left against the truck; and that she was traveling at a rate of speed that enabled her to reach the intersection from an undisclosed point on Carll Street, west of the intersection, while the plaintiff's driver traveled not more than 40 feet, at the rate of 5 to 10 miles per hour, so as to reach the point of collision at the same time. And the excessive speed is corroborated by the testimony of the traffic officer that, although he looked, he did not see her approach at any time.

In the light of this evidence we are of the opinion that the question of the defendant's negligence was an issue of fact and that the court would not be justified in disturbing its finding.

We are of the opinion that the court erred in sustaining the defendant's motion for judgment notwithstanding the verdict.

It appears from the transcript that the court overruled the defendant's motion for a new trial in the same entry in which it sustained her motion for judgment. We have examined the record and find no error prejudicial to the defendants in overruling the motion for a new trial. None has been pointed out to us.

We, therefore, reverse the judgment and remand the cause to the trial court for judgment on the verdict.

*Judgment reversed.*

HILDEBRANT, J., concurs.

Ross, J., dissenting. The trial court granted a motion *non obstante veredicto*, filed by the defendant, and overruled a motion of the defendant for a new trial. It would seem to be more consistent with the statutes (Sections 2323.18 and 2323.181, Revised Code) had the court granted a conditional new trial predicated upon the reversal of the entry granting the defendant's motion for judgment. As it was, the court simply overruled the motion for a new trial. In each action of the court, I think error intervened. I think that there were factual issues which required presentation to a jury, and which, therefore, precluded the granting of the motion *non obstante*. On the other hand, I think that the manifest weight of the evidence was in favor of the defendant, and that, therefore, the trial court should have granted a new trial. Such being the case, I cannot concur in the conclusion of the majority of the court in favor of entering judgment on the verdict.